*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. SMITH, Minor.

UNPUBLISHED
August 13, 2019

No. 346653
Clare Circuit Court
Family Division
LC No. 16-000068-NA

Before: CAVANAGH, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor child, LS, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist); (g) (failure to provide proper care or custody); and (j) (reasonable likelihood of harm if returned to parent).[1]  We affirm.

## I. PERTINENT FACTS

In July 2016, the Department of Health and Human Services (DHHS) filed a petition requesting removal of respondent's children from her care due to the lack of hot water in the home, continuous violence in the home, failure to follow through with the children's mental health needs, and respondent's unemployment resulting in her inability to support herself or the children.  Subsequently, at the preliminary hearing, a worker with Children's Protective Services reported that respondent was in the process of being evicted from her home, and it was unclear where the children were residing, but she believed that the two oldest teenage girls were living with their adult boyfriends.

---

[1] During these proceedings, respondent-father released his parental rights to LS, and he is not a party to this appeal.  Accordingly, our use of the term "respondent" refers to respondent-mother. Additionally, we note that prior to the termination hearings in this case, respondent-mother's other minor child, KS, was released to the father's care and custody and was not subject to the trial court's order.

-1-

In August 2016, a domestic violence incident occurred between respondent and her other minor child, KS, and respondent was taken to the emergency room as a result of being assaulted by KS. Shortly thereafter, the children were placed with their father. Respondent entered an admission plea and was ordered to participate in a variety of services to address issues with housing, employment, education, parenting skills, and mental health.

Over the course of the nearly two-year case, respondent was represented by four different attorneys. Additionally, KS was moved in and out of her father's home but was eventually returned to his care and custody and jurisdiction over her was ended. However, as relevant to this appeal, LS was moved into the foster care system and struggled with behavioral issues, including "sexual acting out behaviors." His psychological evaluation revealed that lack of stability and permanence was affecting his mental health and the trial court concluded that a termination trial was required to establish permanency for LS. Ultimately, following a termination hearing, the trial court terminated respondent's parental rights to LS.

## II. STATUTORY GROUNDS

Respondent first argues that clear and convincing evidence did not establish any statutory ground for termination of her parental rights under MCL 712A.19b(3). We disagree.

To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination under MCL 712A.19b(3) has been established by clear and convincing evidence. *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review for clear error the trial court's ruling that a statutory ground for termination has been established. MCR 3.977(K); *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009).

The trial court held that one of the grounds for which clear and convincing evidence supported the termination of respondent's parental rights was MCL 712A.19b(3)(c)(*i*), which provides:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Thus, termination of parental rights is proper under MCL 712A.19b(3)(c)(*i*) when "the totality of the evidence amply supports that [the parent] had not accomplished any meaningful change in the conditions" that led to the court taking jurisdiction over the minor, *In re Williams*, 286 Mich

App 253, 272; 779 NW2d 286 (2009), and it is unlikely "that the conditions will be rectified within a reasonable time considering the child's age," MCL 712A.19b(3)(c)(*i*).

In this case, the dispositional order regarding LS was entered on November 1, 2016 and the termination hearings were held in November 2018; thus, the requirement that 182 or more days elapsed since the issuance of the initial dispositional order was met. MCL 712A.19b(3)(c). At the initial disposition, respondent's parent-agency treatment plan (PATP) required her to address issues with housing, employment, education, parenting skills, and mental health. More specifically, respondent was required to attend, participate in, and benefit from family and individual counseling and parenting classes. Respondent was also required to locate and maintain suitable housing and employment. Further, respondent was required to participate in a psychological evaluation and follow the recommendations of the evaluator. Lastly, respondent was required to obtain her high school diploma.

At the time of the termination hearing, respondent had not received her GED and had stopped working on that goal since around December 2017 because "she didn't have time to do that" with her employment. Furthermore, the foster care worker was unsure if respondent still was employed considering her incarceration. Moreover, given that respondent had reported six different jobs between May 2017 and October 2018, the foster care worker opined that respondent had not maintained stable income.

In terms of housing, the testimony presented at the termination hearing confirmed that between 2016 and the hearing, respondent had moved several times, been evicted three times, had stayed overnight at some friends' homes on some occasions, and resided in a homeless shelter for about one and a half months. Accordingly, the foster care worker indicated that respondent had not shown stable housing throughout the case.

The foster care worker also noted that respondent had five different mental health providers throughout the case and, although she felt respondent "partially complied" with the services, the foster care worker did not think respondent benefited from the services "due to not attending consistently." This testimony was corroborated by the testimony of several service providers who indicated that respondent inconsistently attended or did not show a benefit from the services they provided.

The foster care worker also testified that respondent's parenting-time attendance had improved recently, but in the past, she would show up late. Overall, she believed that respondent attended 105 out of 119 visits offered. However, there were still concerns about respondent's continued discussion of inappropriate topics with LS. Accordingly, the foster care worker felt that respondent "partially complied" with parenting skills and parenting education, but did not benefit from the services.

Respondent argues that the trial court erred when it found clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(c) because the trial court created a delay in the case by appointing her an attorney that the trial court knew had a conflict. A respondent in a termination proceeding is entitled to representation by an attorney, *Williams*, 286 Mich App at 274-275, and she was represented by counsel. Respondent retained her first counsel in these proceedings, but counsel soon withdrew because of respondent's failure

to pay for services. On September 8, 2016, respondent was appointed counsel, but that attorney moved to withdraw due to a conflict of interest created by her representation of KS in a delinquency case in which respondent was the victim of KS's assault. By October 10, 2016, the trial court had appointed new counsel to represent respondent. Respondent fails to explain how her ability to comply with services was impacted by any "delay" in the court's appointment of counsel and fails to show how it affected the outcome of her case. This Court is not required to unravel and elaborate for respondent her arguments and may deem any such issue abandoned. See *People v Cameron*, 319 Mich App 215, 232; 900 NW2d 658 (2017) (citations omitted). Moreover, no objection was made in the trial court in this regard; thus, our review is for plain error affecting respondent's substantial rights and we conclude that respondent has failed to establish that relief is warranted. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Respondent next argues that once the trial court authorized DHHS to file a supplemental petition to terminate her parental rights, she was no longer afforded any services and had to find parenting classes on her own. However, we note that when the trial court first authorized DHHS to file a supplemental petition to terminate respondent's parental rights in August 2017, the trial court stated, "The services previously ordered for the family will continue to be ordered at this point." Thereafter, despite the court's authorization, DHHS did not file a supplemental petition at that time, opting instead to provide additional services to respondent. Furthermore, when the supplemental petition was filed in October 2018, the trial court specifically indicated that the goal pending the termination hearing was reunification and that all services previously ordered would continue to be ordered. Accordingly, there is no indication within the lower court record that respondent was unable to obtain services throughout this case due to any actions by DHHS or the trial court. Instead, the record suggests that respondent was afforded a wide variety of services, including some that she sought out on her own. However, as discussed above, the testimony presented at the termination hearing supports a conclusion that respondent failed to regularly attend and benefit from those services.

Respondent further argues that she was never offered family therapy. However, this statement is not supported by the record. Indeed, the record suggests that family therapy was provided to respondent despite the fact that respondent had not shown sufficient progress in all areas. A psychologist who performed psychological evaluations on respondent in 2016 and 2018 testified that even though he saw improvements by respondent in March 2018, he did not recommend family therapy because he did not believe it was appropriate at that time. The psychologist stated, "Family therapy[,] in my opinion[,] is something that's done a little later in the process when you're getting close to reunification." Nonetheless, a supervisor from Community Mental Health (CMH) testified that around May 2018, respondent requested and began participating in "between four and six" family therapy sessions through CMH. Accordingly, there is no merit to respondent's assertion.

Additionally, respondent claims that while she did move multiple times throughout the case, she remained in each home for six to eight months and attended most of her parenting time. Respondent posits that additional steps should have been taken to reunify her with LS during those time frames. Indeed, this very topic was addressed during the termination hearing when respondent's counsel inquired of the foster care worker why steps were not taken to reunite LS and respondent while respondent was maintaining a suitable home for several months. The

foster care worker responded that there were remaining concerns about respondent's struggle to attend parenting time on time, having inappropriate conversations, and instability with other services. The foster care worker further stated, "I don't believe it's appropriate to move visits into a home unless we're gonna [sic] be moving toward returning him home within the next couple of months[.]" She indicated that "if we were to move LS back into the home for parenting time, [then] he would believe that he was going home and at this point the barriers for [respondent] aren't reduced." The foster care worker opined that this "would cause [LS] confusion" and "would cause him some dysregulation." Likewise, the psychologist indicated that he did not suggest moving to unsupervised parenting time because respondent had not demonstrated improvement for an extended period, and he did not want LS to perceive unsupervised visitation as encouragement that he was going home.

Furthermore, one of respondent's prior landlords testified that he rented a property in Harrison to respondent but, for the first six months, the lease was paid by the Mid-Michigan Community Action Agency. Respondent then lived there for two more months, but failed to pay rent before being evicted. Accordingly, this testimony does not support a conclusion that respondent had stable housing; rather, despite living rent-free for six months, respondent was not able to collect sufficient funds to pay for her housing even with assistance.

In summary, respondent never demonstrated that she could maintain the consistency and stability necessary to parent LS. In other words, the record evidence is clear and convincing that the conditions that led to the adjudication continued to exist and there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the child's age. Accordingly, the trial court did not clearly err when it terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*). Because only one statutory ground for termination must be proved, we need not address the additional grounds upon which the court based its decision. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

### III. BEST INTERESTS

Respondent also argues that the trial court clearly erred in finding that termination of her parental rights was in LS's best interests. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Whether termination of parental rights is in the child's best interests must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews for clear error a trial court's finding that termination of parental rights is in the child's best interests. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009).

When determining best interests, the focus is on the child, not the parent. *Moss*, 301 Mich App at 87. The trial court should review all of the evidence available to determine the child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). A number of factors may be considered, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). The

court may also consider psychological evaluations, a parent's history of domestic violence, the child's age, and the parent's compliance with her case service plan. *White*, 303 Mich App at 714; *Jones*, 286 Mich App at 131.

Respondent first argues that the trial court clearly erred in finding that termination of her parental rights was in LS's best interests because she and LS had a bond. Among "a variety of factors," the strength of the bond between the child and the parent is only one factor for the court to consider. See *White*, 303 Mich App at 714. Indeed, at the termination hearing, the trial court informed respondent, "I think you love your child. But that stability is of primary importance and you have not been able to provide it to him throughout his life." Accordingly, it is clear that the trial court concluded that any bond between respondent and LS was clearly outweighed by the potential harm to LS given respondent's continuous instability.

Respondent also argues that the trial court inappropriately relied on LS's behavioral difficulties to justify termination of her parental rights, but family counseling was never offered and respondent was not given any opportunity to parent LS. As previously discussed, respondent did participate in family counseling and any delay in receiving family counseling was due to her inconsistency in participating and benefiting from services. Furthermore, the CMH supervisor testified that she believed a lack of stability and uncertainty about his placement played a role in LS's behavioral issues. She confirmed that stability would provide LS "the best opportunity to progress towards success," and LS's foster family was willing to adopt LS and provide him with permanency. The foster care worker further noted her concern that, given respondent's attendance with services, respondent would not be able to ensure LS's attendance at his appointments. Additionally, she indicated that given respondent's lack of stability, LS's behavior could regress if his basic needs were not being met.

In whole, the trial court noted that respondent had a history of unstable employment, housing instability, and domestic violence in the home that demonstrated a serious risk of harm to LS. Notably, a court may rely on a parent's history in determining whether the child would be harmed if returned to the parent's care. *In re Archer*, 277 Mich App 71, 75; 744 NW2d 1 (2007). Respondent's continued instability throughout the case demonstrated that respondent had not benefited from the plethora of services she has been provided. Given this history, the trial court did not clearly err when it concluded that termination of respondent's parental rights was in LS's best interests.

## IV. DUE PROCESS

Lastly, respondent argues that her due-process rights were violated throughout this case on several occasions. However, respondent did not raise these arguments before the trial court and, on appeal, she fails to provide any meaningful argument or cite any authority in support of her claims. As previously stated, this Court is not required to unravel and elaborate respondent's arguments for her and may deem any such issue waived. See *Cameron*, 319 Mich App at 232.

In any event, we have reviewed respondent's arguments and conclude that she has not established that her due-process rights were violated.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien